# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LIONEL JACKSON (#108969)**　　　　　　　　　　**CIVIL ACTION NO.**

**VERSUS**　　　　　　　　　　　　　　　　　　　　**17-329-SDD-EWD**

**ALVIN ROCHE, JR., ET AL.**

## NOTICE

　　Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

　　In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

　　ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

　　Signed in Baton Rouge, Louisiana, on August 29, 2019 .

　　　　　　　　　　　　　　　　　　　　　　　　　_/s/ Erin Wilder-Doomes_
　　　　　　　　　　　　　　　　　　　　　　　　**ERIN WILDER-DOOMES**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LIONEL JACKSON (#108969)** | **CIVIL ACTION NO.** |
| **VERSUS** | **17-329-SDD-EWD** |
| **ALVIN ROCHE, JR., ET AL.** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Motion to Dismiss ("Motion") filed on behalf of Defendants Alvin Roche, Jr., Robert Lofton, Jimmy Kuhn, Sheryl Ranatza, and Jim Wise ("Defendants").[1] The Motion is opposed by Plaintiff Lionel Jackson ("Jackson").[2] For the following reasons, the undersigned recommends that the Motion be granted.

**I.  Background**

Jackson, an inmate at the Louisiana State Penitentiary, Angola, Louisiana, filed the present action *pro se* pursuant to 42 U.S.C. § 1983 against Alvin Roche, Jr., Robert Lofton, Jimmy Kuhn, Sheryl Ranatza, and Jim Wise ("Defendants").[3] Jackson alleges the retroactive application of parole guidelines violated the Constitution's "prohibitions against ex post fact [sic] laws, and denied him due process in the parole hearing procedure."[4] Defendants previously filed a Motion to Dismiss[5] based on prescription, which was denied.[6] Defendants now contend the claims against

---

[1] R. Doc. 14.
[2] R. Doc. 15.
[3] R. Doc. 1.
[4] R. Doc. 1, p. 6. On June 5, 2017, Jackson filed a document entitled "Memorandum of Law and Argument in Support of 42 U.S.C. § 1983 For Mandatory/Permanent Injunction." (R. Doc. 3). The Court construes this filing as a First Amended Complaint as it provides further factual details regarding the circumstances surrounding Jackson's parole hearings. Moreover, the document was filed within the time period provided for amendment as a matter of course in Fed. R. Civ. P. 15(a)(1).
[5] R. Doc. 9.
[6] R. Doc. 16.

them substantively lack merit and fail to state a claim upon which relief may be granted such that the Complaint should be dismissed.

## II. Law and Analysis

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[7] Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[8] Generally, when deciding a Rule 12(b)(6) motion to dismiss, the Court will not consider matters outside the pleadings, except those matters of which the Court takes judicial notice.[9]

Jackson raises three *ex post facto* challenges: 1) a 2010 change to the number of votes needed to obtain parole (an increase from 3 to 5 votes for the crime of violence against a peace officer); 2) a 2012 change that gives victims the right to testify via letters that neither the prisoner nor the attorney can review; and 3) a 1995 change that includes a victims' rights advocate on the parole board.[10]

A statute violates the *ex post facto* clause only if it retroactively "effects [a] change in the definition of [petitioner's] crime" or "increases the 'punishment' attached to [petitioner's] crime."[11] Since Jackson challenges changes in statutory provisions governing parole guidelines,

---

[7] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[8] *Id.* (citation omitted).
[9] *Davis v. Bellsouth Telecommunications*, Civ. Action No. 11-722, 2012 WL 2064699 at *1 (M.D. La. June 7, 2012) (citations omitted).
[10] R. Doc. 1, pp. 6-7. In Jackson's original Complaint, he also complained that victims were able to testify directly or in rebuttal to testimony or evidence offered on behalf of the offender. (R. Doc. 1, p. 7). This Court construed Jackson's Memorandum of Law and Argument in Support of 42 U.S.C. § 1983 for Mandatory/Permanent Injunction as an Amended Complaint, in which Jackson did not complain regarding victims' in person testimony. Regardless, the analysis in Section II. A. below applies to testimony of victims by letter, as well as in-person testimony.
[11] *Wallace v. Quarterman,* 516 F.3d 351, 354 (5th Cir. 2008) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 505 (1995)).

the latter analysis applies in his case.[12] When considering whether a change in parole guidelines violates the *ex post facto* clause, the controlling inquiry is whether retroactive application of the change in the law creates a "sufficient risk of increasing the measure of punishment attached to the covered crimes."[13] However, the "focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable."[14]

### A. *Victims' Testimony and Victims' Rights Advocate as Member of the Board*

Jackson committed his crime in 1994.[15] La. R.S. 15:574.2.1, which governs communications with the committee on parole was not enacted until 1997.[16] The statute provides that, generally, communication with the committee must be in an open hearing or by written letter addressed to the Board of Parole that is deemed a public record and subject to public inspection.[17] Jackson complains about the exception to this general rule that victim letters are not subject to public inspection.[18]

The law regarding having a victims' rights advocate as a member of the board was also changed after Jackson's crime. Prior to 1995, membership on the board of parole was based solely on appointment by the governor.[19] Pursuant to Act 303 of 1995, the following provision was added to the statute governing membership on the board of parole: "One of the seven members [on the board of parole] shall be appointed from a list of at least three names submitted by Victims and

---

[12] *See Wallace,* 516 F.3d at 354, 356 (interpreting statute amending parole procedure).
[13] *Cal. Dep't. of Corr. v. Morales*, 514 U.S. 499, 509 (1995); *Garner v. Jones*, 529 U.S. 244, 255 (2000).
[14] *Morales*, 514 U.S. at 506 n. 3.
[15] R. Doc. 3, p. 7.
[16] The statute was also amended in Acts 2012 No. 714.
[17] La. R.S. 15:574.2.1(A) and (B).
[18] La. R.S. 15:574.2.1(E).
[19] 1994 La. R.S. 15:574.2(A).

3

Citizens Against Crime, Inc."[20] This provision was amended through the years, and finally, in 2012, it was again omitted from the statute.[21] At the time of Jackson's 2017 parole hearing, there was no provision requiring a victims' rights advocate to be a voting member of the board. However, Mr. Roche was, according to the Complaint, a victims' rights advocate and board member.[22] Mr. Roche voted against granting Jackson parole.[23]

"Rules affecting eligibility for parole may violate the [*ex post facto*] clause, but discretionary rules affecting suitability do not."[24] Both allowing victim testimony via a letter, which is not reviewable by the inmate or his attorney, and having a victims' rights advocate as a voting member on the parole board do not facially violate the *ex post facto* clause because these laws do not affect Jackson's eligibility for parole.[25] Rather, these laws may affect a discretionary decision regarding Jackson's suitability for parole. Only if the amendment as applied presents a sufficient risk of increased punishment would the *ex post facto* clause is implicated under these facts.[26] Neither law does so.

First, victim testimony is one consideration of many for a parole board to utilize in making its discretionary determination regarding whether an inmate should be granted parole. Other factors include, but are not limited to the following: the circumstances of the offense; previous social history and criminal record; the inmate's conduct, employment and attitude in prison; participation in vocational training, adult education, literacy, or reading programs; and any reports of physical and mental examinations which have been made.[27] In *Olstad v. Collier*, an inmate

---

[20] La. R.S. 15:574.2 *as amended by* 1995 La. HB 2232.
[21] 2012 La. HB 518 (Act 714).
[22] R. Doc. 3, p. 5.
[23] R. Doc. 3, p. 5.
[24] *Wallace*, 516 F.3d at 355.
[25] *Id.*
[26] *Id.* at 356.
[27] La. R.S. § 15:574.2.

4

complained of new policies affecting suitability for parole including policies to disregard good time credits and a policy requiring "violent" offenders to serve a significant portion of their sentences before being "seriously" considered for parole.[28] The Fifth Circuit opined that the new policies had not affected the plaintiff's eligibility for parole but only had implications affecting the plaintiff's suitability for parole. In determining that the *ex post facto* clause was not implicated, the Fifth Circuit stated as follows:

> In *Wallace,* this court reasoned that while laws that affect a prisoner's eligibility for parole may have ex post facto implications, laws that affect the discretionary determination of suitability for parole do not. Olstad became eligible for parole review after serving 20 years in prison, and he received a parole review. In conducting its review, the Board could consider the additional factors that Olstad now complains of in determining Olstad's suitability for parole release. However, these allegedly new factors affect only the Board's discretionary determination of suitability and do not affect Olstad's eligibility for parole; thus, the factors do not have ex post facto implications.[29]

Jackson's challenge regarding victim testimony does not violate the *ex post facto* clause because this change in the law only affects the discretionary determination of Jackson's suitability for parole, rather than his eligibility for parole.

Further, this change does not create a sufficient risk of increasing the length of Jackson's sentence. When the rule does not by its own terms show a significant risk, the respondent must demonstrate by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.[30] In *Garner*, *supra*, the Supreme Court examined *Morales*, and noted the standard for analyzing an *ex post facto* challenge as follows:

---

[28] 326 Fed.Appx. 261, 262-63 (5th Cir. 2009).
[29] *Id.* at 263.
[30] *Garner*, 529 U.S. at 255.

5

> The standard announced in *Morales* requires a more rigorous analysis of the level of risk created by the change in law. (After *Collins*, the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of disadvantage . . . but on whether any such change . . . increases the penalty by which a crime is punishable). When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.[31]

Allegations of some ambiguous sort of disadvantage are not sufficient to demonstrate a violation of the *ex post facto* clause.[32] Moreover, a new procedure that creates only a speculative and attenuated risk of increasing the measure of punishment does not violate the *ex post facto* clause.[33]

The argument that the change in the parole guidelines regarding victim testimony has the effect of increasing Jackson's punishment is conjectural. Victim testimony, via private letter or otherwise, is only one factor to be considered. The decision of the board indicates that Jackson was denied parole for reasons other than merely victim opposition, including, prior criminal history, probation/parole unsatisfactory/violated, and law enforcement and/or judicial objection.[34] Jackson has not shown that the consideration of victim testimony has created a "sufficient risk of increasing the measure of punishment attached to the covered crimes."[35]

Similarly, the change in the law regarding victims' rights advocate sitting as a board member also affects suitability, rather than eligibility for parole and Jackson has failed to

---

[31] *Garner*, 529 U.S. at 255 (internal quotations and citations omitted).
[32] *See Morales*, 514 U.S. at 506 n. 3.
[33] *Olstad*, 326 Fed.Appx. at 263 *citing Morales*, 514 U.S. at 508-09.
[34] R. Doc. 3-1, p. 1. Although a court is not permitted to look beyond the pleadings when deciding a 12(b)(6) motion, documents attached to the complaint may be considered. *Inclusive Communities Project, Inc. v. Lincoln Property Co.*, 920 F.3d 890, 900 (5th Cir. 2019).
[35] *Morales*, 514 U.S. at 509.

6

demonstrate that this change creates a sufficient risk of increasing his sentence.[36]  Mr. Roche was one voting member of the panel, and Jackson has not alleged that any other parole member voted to grant him parole or that Mr. Roche was the only vote against parole.

### B. *Increase in Number of Votes*

At the time of the commission of Jackson's crime, in 1994, "[t]hree votes of a three member panel" was required to grant parole, or "if the number exceed[ed] a three member panel, a majority vote of those present [was required]."[37]  In 2010, among other changes, the following pertinent provision was added to La. R.S. § 15:574.2:

> Notwithstanding any other provision of law in this Section, no person convicted of a crime of violence against any peace officer as defined in R.S. 14:30(b), shall be granted parole except after a meeting, duly noticed and held on a date to be determined by the chairman, at which at least five of the seven members of the committee are present and all members present vote to grant parole.[38]

Courts within the Fifth Circuit and in other circuits have found that a change in the number of votes required for parole does not violate the *ex post facto* clause.[39]  Rather, an increase in the number of votes required for parole has been characterized as affecting suitability rather than eligibility for parole.  Further, for the same reasons Jackson's other challenges fail, here any

---

[36] As the provision requiring a member of the parole board to be from a victim advocate group was removed from La. R.S. 15:574.2 in 2012 and was no longer in the statute in 2017 when Jackson's parole hearing was conducted, it is not clear that Jackson can even make an *ex post facto* challenge regarding this provision.  *See* La. HB 518 (Act 714).
[37] 1994 La. R.S. § 15:574.2B(1).
[38] La. R.S. § 15:574.2C(3).
[39] *See Edmond v. King*, No. No. 2:12-CV-159-KS-MTP, 2013 WL 256935, at *2 (S.D. Miss. Jan. 23, 2013) (*ex post facto* clause challenge regarding an increase in the number of votes required to obtain parole from three to four members was denied as affecting suitability of parole rather than eligibility). *See also, Alston v. Robinson,* 791 F.Supp. 569, 591 (D. Md.1992), *aff'd,* 19 F.3d 10 (4th Cir.1994) (retroactive application of change in percentage of parole board member votes for parole eligibility not *ex post facto* violation; merely a procedural change that does not "substantially alter" plaintiff's "quantum of punishment"); *Cummings v. Burt,* 121 F.3d 707 (6th Cir.1997) (retroactive application of rule that increased number of parole board members participating in review was not *ex post facto* violation); *State ex rel. Gonzalez v. Superior Court,* 907 P.2d 72, 74 (App.1995) (retroactive application of rule that altered number of parole board member votes was not *ex post facto* violation since it did not alter the punishment).

suggestion that the change increased Jackson's punishment is speculative. In *Kyles v. Davis*,[40] the Fifth Circuit considered an as-applied *ex post facto* challenge to a Texas statute that changed the size of a parole panel. At the time of the offense, a majority vote of a 3-member panel was required for parole. The challenged statute required a 2/3 vote of seven board members in a capital case. The court first found that "amendments enlarging parole panels do not 'facially violate the Ex Post Facto Clause [because they] affect the discretionary procedure for determining suitability rather than eligibility for parole.'"[41] The court then rejected the petitioner's argument that he had demonstrated a risk of increased confinement from the change because two members of the parole board voted for his parole, which would have been enough under the old procedure, stating:

> [Petitioner] tries to make that showing by pointing to the two members of the Parole Board who favored his parole. If those two had been on a three-member panel selected under the old procedure, then he would have had enough votes for parole. The problem is the "if." [Petitioner] cannot show that a randomly selected three-member panel would have included the two members who voted in his favor …. This conjecture about what would have happened under the old system is not enough to establish the likelihood of increased punishment that an ex post facto violation requires.[42]

Jackson has not shown that any of the members of the parole board voted in favor of parole. Even if he had, under the reasoning of *Kyles*, what might have happened under the old procedure is too speculative to meet the requirement of showing increased punishment from the change to the composition of the panel.

### III. Conclusion

Jackson's *ex post facto* challenges relate to parole guidelines that affect suitability for parole rather than eligibility. Further, Jackson has failed to make a showing that, as applied, any

---

[40] 734 Fed.Appx. 912 (5th Cir. 2018).
[41] 734 Fed.Appx. at 913.
[42] *Id.* at 914.

of these provisions creates a significant risk of increased confinement. As the claims are without merit, this action should be dismissed with prejudice.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Defendants' Motion to Dismiss[43] be **GRANTED** and that this matter be **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **ORDER**

In light of the recommendation, **IT IS ORDERED** that Plaintiff Lionel Jackson's pending Motion for an Order Compelling Discovery[44] is **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on August 29, 2019 .

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[43] R. Doc. 9.
[44] R. Doc. 21.